THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROY MALDONADO, Defendant-Appellant.

First District (4th Division) No. 1—87—2428

Opinion filed December 21, 1989.—Rehearing denied February 7, 1990.

Frederick F. Cohn, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Theodore F. Burtzos, and Susan J. Crane, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:
Defendant, Roy Maldonado, was convicted of two counts of murder

(Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2)) following a jury trial in the circuit court of Cook County. The trial judge sentenced defendant to the penitentiary for two concurrent terms of natural life.

Defendant now appeals, contending he did not receive a fair trial because: (1) the trial judge refused to suppress involuntary statements he made to the police; (2) defense counsel, during discovery, was not informed where a State's witness lived or worked; (3) the trial judge restricted the scope of the cross-examination of a State's witness; (4) a portion of a tape-recorded telephone conversation was excluded from evidence; (5) the evidence was insufficient to prove beyond a reasonable doubt his guilt; (6) the prosecutor made several improper and prejudicial remarks throughout the trial; (7) the jury did not have the tape-recorded telephone conversation in the jury room during its deliberations; and (8) the trial judge refused defendant's proffered jury instruction.

We affirm.

BACKGROUND

The record contains the following pertinent facts. The victims, Theresa Musto and Vincent Pagano, lived together at 4520 North River Road in Schiller Park, Illinois. On April 7, 1982, their bodies were found in their home, on the living room floor with pillows and sofa cushions lying over them.

The victims were fatally shot. Sheriff's police found live bullets and .38 caliber spent cartridge casings in the living room and kitchen. Additionally, several areas in the apartment were ransacked.

On March 3, 1983, Chicago police officer Phillip Handzel questioned defendant's brother Fidel and a woman regarding another shooting. Handzel asked the woman for identification. When she opened her purse, the officer saw three guns. They were arrested; car keys were discovered in a pat-down search of Fidel. A search of their automobile uncovered a .38 caliber semiautomatic pistol. Subsequent testing of the pistol, and of the bullets recovered from the bodies of Musto and Pagano and from their apartment, determined that the pistol was the murder weapon in the Musto and Pagano shooting.

On March 6, 1983, Detective Thomas West arrested defendant as a suspect in another shooting (hereinafter the Rojas murder). After being advised of his *Miranda* rights, he was questioned first on the Rojas murder and then on the Musto and Pagano murders. Present for the interrogation were Detectives West, Robert O'Neill, and Joseph Carrone. Defendant had previously been an informer for Detective O'Neill. Defendant refused to talk about the Rojas murder because his brother

was involved and in custody.

Defendant, however, did make statements regarding the Musto and Pagano murders. He stated that he was at the scene when the shooting occurred. He and an acquaintance, "Crazy Ricky" Berrera, went to the couple's apartment to sell them approximately $35,000 worth of narcotics and a machine gun. Defendant left the apartment and went to their automobile to retrieve the narcotics. While he was away, Berrera had shot and killed Musto and Pagano. He and Berrera ran to the car and drove away. Defendant was afraid to take the gun away from Berrera. He dropped Berrera off at a bus stop.

Michael Van Amburgh, a special agent of the United States Treasury Department, Bureau of Alcohol, Tobacco, and Firearms, questioned defendant on March 22, 1983. Defendant told the agent that he and family members purchased pistols, using different names, from a gun dealer in Ottawa, Illinois. Defendant stated that after he bought the pistols, he had them converted to fully automatic weapons equipped with silencers. Van Amburgh went to the gun dealer. He learned that defendant and family members did buy six or seven weapons. The serial number of one of the pistols they bought matched that of the pistol recovered from Fidel Maldonado's car—the weapon in the Musto and Pagano murders.

Duane McQuiston was an inmate at Cook County jail with defendant. In 1983 and a part of 1984, he and defendant were assigned to the same tier in the jail and spent approximately 12 hours together per day. They discussed crime. Defendant boasted to McQuiston about making money, shooting people, and enjoying guns equipped with silencers. Defendant explained to McQuiston that one could stage a narcotics deal, where one could pose as selling cocaine and then rob the buyer of his money, or pose as buying cocaine and rob the seller of the narcotic. Defendant further told McQuiston how he had done this to Musto and Pagano. He explained to McQuiston that he and Berrera learned that Pagano had money for a cocaine deal, so they shot him and Musto also.

Defendant was indicted for the murder of Musto and Pagano; the cause was tried to a jury. On April 23, 1987, the jury convicted defendant as charged. At the sentencing hearing on July 23, the trial judge denied defendant's post-trial motions. Defendant having waived a jury for the penalty phase of the trial, the trial judge heard the evidence in aggravation and mitigation. At the close of the evidence and arguments, the judge determined that defendant qualified for the death penalty. However, the trial judge ruled that imposing the death penalty on defendant would be inappropriate. Pursuant to statute, he sen-

tenced defendant to the penitentiary for a natural life term on each conviction, to be served concurrently. Defendant appeals.

OPINION

I

Defendant claims that he did not receive a fair trial because his statements to the police were involuntary. Noting that he was an informer for Detective O'Neill, defendant contends that whatever information he provided to the police would not be used against him. Further, the detectives acknowledged this relationship. Defendant argues that he made the statement to the detectives as an informer.

■ An individual who is subjected to custodial police interrogation concerning matters that might tend to incriminate him is entitled to the procedural safeguards that the United States Supreme Court outlined in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The person interrogated may waive these rights, but a heavy burden rests on the State to show that he waived his constitutional rights knowingly and intelligently. (384 U.S. at 475, 16 L. Ed. 2d at 724, 86 S. Ct. at 1628.) The trial court must initially determine whether defendant knowingly, intelligently, and voluntarily waived these rights (*People v. Martin* (1984), 102 Ill. 2d 412, 426, 466 N.E.2d 228, 234), based on a preponderance of the evidence. *People v. King* (1986), 109 Ill. 2d 514, 525, 488 N.E.2d 949, 955.

■ While the relationship of an interrogator to the person being interrogated is a relevant consideration in assessing a statement's voluntariness, it is only one factor out of the totality of the circumstances. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 173-74, 368 N.E.2d 870, 876.) The test is whether the defendant made the statement freely, voluntarily, and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. Our standard of review is not the criminal standard of beyond a reasonable doubt, but rather, that of manifest weight of the evidence. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, 606, cited in *Martin*, 102 Ill. 2d at 426-27, 466 N.E.2d at 234.) In other words, the trial court's determination will not be reversed on appeal unless it is against the manifest weight of the evidence. *King*, 109 Ill. 2d at 525, 488 N.E.2d at 955.

■ After reviewing the record, we cannot say that the trial court's finding of voluntariness was against the manifest weight of the evidence. Defendant was given *Miranda* warnings. He then refused to discuss the Rojas murder, but chose to make a statement on the Musto

and Pagano murders. Although defendant previously had given information to the police as an informer, his past conversations had never been preceded by *Miranda* warnings. Further, after the detectives gave defendant the *Miranda* warnings, there was no evidence that they would, or defendant should, disregard the warnings. Detectives West, O'Neill, and Carrone all testified that they made no promises to defendant. They denied telling him that if he gave information it would not be used against him. We uphold the trial court's denial of defendant's amended motion to suppress.

## II

Defendant claims that he was denied a fair trial because, during discovery, defense counsel was not informed where McQuiston lived and worked. The trial judges found that the disclosure of McQuiston's home and work addresses would result in a substantial risk to him of physical harm; further, this risk outweighed the disclosure's usefulness to defense counsel. During trial, however, the trial judge ordered the State to provide defense counsel with the information and allowed defense counsel to reopen his cross-examination of McQuiston if any issues arose from the information.

■ Our supreme court requires the State to disclose to defense counsel the names and last known addresses of persons whom the State intends to call as witnesses. However, the trial court may deny disclosure if it finds that there is a substantial risk to any person of physical harm, intimidation, bribery, economic reprisal, or unnecessary annoyance or embarrassment resulting from the disclosure which outweighs any usefulness of the disclosure. (See 107 Ill. 2d R. 412.) A defendant carries the burden of showing that the nondisclosure of the names and addresses of prospective witnesses resulted in surprise and prejudice. Absent such a showing, a reviewing court will not find an abuse of discretion. *People v. Gutierrez* (1985), 136 Ill. App. 3d 774, 784, 483 N.E.2d 944, 951.

■ The record in the case at bar contains no evidence of prejudice. Defense counsel vigorously cross-examined McQuiston and chose not to reopen the cross-examination after investigating the information. We find no abuse of discretion.

## III

Defendant claims he was denied a fair trial because the trial judge restricted the scope of his cross-examination of McQuiston. Defendant contends that McQuiston was subjected to limited cross-examination concerning his prior street gang affiliation and various issues relating

to his background as a burglar.

■ Defendant invokes his constitutional right to confront the witnesses against him. (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8.) Impeachment through showing bias comes within the ambit of the constitutional guarantee; a defendant has the right to cross-examine a prosecution witness. *People v. Rufus* (1982), 104 Ill. App. 3d 467, 472, 432 N.E.2d 1089, 1094.

At common law, a court should allow a defendant the widest latitude in cross-examination for establishing bias. (*Rufus*, 104 Ill. App. 3d at 473, 432 N.E.2d at 1095.) This latitude rests in the sound discretion of the trial court; a reviewing court will interfere in the trial court's decision only where there is a clear abuse of discretion resulting in manifest prejudice to the defendant. *People v. Franklin* (1976), 42 Ill. App. 3d 408, 420, 355 N.E.2d 634, 644.

The constitutional guarantee and the common law right are separate. The discretionary authority of the trial court to restrict the scope of cross-examination comes into play only after the court has permitted, as a matter of right, sufficient cross-examination to satisfy the constitutional guarantee. (*Rufus*, 104 Ill. App. 3d at 473, 432 N.E.2d at 1095.) To determine the constitutional sufficiency of cross-examination, a court looks not to what a defendant had been prohibited from doing, but to what he had been allowed to do. If the entire record shows that the jury had been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because defendant had been prohibited on cross-examination from pursuing other areas of inquiry. *Rufus*, 104 Ill. App. 3d at 473-74, 432 N.E.2d at 1095, quoting *People v. Heins* (1981), 94 Ill. App. 3d 1041, 1048, 419 N.E.2d 420, 425-26.

■ After reviewing the entire record in the case at bar, we conclude that the jury had been made aware of adequate factors to determine whether McQuiston was worthy of belief. Through McQuiston's testimony and defendant's cross-examination of McQuiston, the jury heard evidence on McQuiston's possible bias stemming from several areas, including his custodial status and criminal record. We find sufficient cross-examination to satisfy the constitutional guarantee. Additionally, we cannot say that the trial court's restrictions on defendant's cross-examination of McQuiston were a clear abuse of discretion that resulted in manifest prejudice to defendant.

## IV

■ Defendant claims he was denied a fair trial because a portion of a tape-recorded telephone conversation was excluded from evidence.

McQuiston knew Dan Slaughter and introduced Slaughter to defendant. Slaughter arranged a three-way telephone conversation between himself, McQuiston, and defense counsel. With permission, defense counsel tape-recorded the telephone conversation. First, defense counsel spoke to McQuiston, with a few interruptions from Slaughter. Then, defense counsel spoke with Slaughter. The trial court limited the playing of the tape to that part of the conversation between defense counsel and McQuiston. Defendant claims that the edited portion of the conversation with Slaughter was relevant to the issue of McQuiston's bias.

The trial court reasoned that playing Slaughter's portion of the conversation would essentially be his testimony on behalf of the defense, without an opportunity for the State to cross-examine him. We agree; it was hearsay and, therefore, inadmissible. See *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741.

Defendant, however, attempts to analogize the conversation with Slaughter as an exception to the hearsay rule. He argues that the Slaughter conversation was an admission by silence on the part of McQuiston. The analogy fails. The hearsay exception of admission by silence generally applies only to a party to the action. (McCormick, Evidence §270 (3d ed. 1984).) In criminal law, this hearsay exception applies to the accused's silence. (*People v. Cihak* (1988), 169 Ill. App. 3d 606, 611, 523 N.E.2d 975, 978; C. Torcia, 4 Wharton's Criminal Evidence §657 (14th ed. 1987).) McQuiston is a witness; he is not the accused. We find no abuse of discretion.

## V

Defendant next claims that the State failed to prove beyond a reasonable doubt his guilt. He contends that "the sole basis" of his conviction was McQuiston's testimony, which was insufficient to sustain his conviction.

Of course, the State carries the burden of proving beyond a reasonable doubt each element of the offense and defendant's guilt. On appeal, however, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276-77.

We have reviewed the entire record in the case at bar. We cannot say that the evidence was so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt.

## VI

Defendant claims he did not receive a fair trial because the prosecutor made several improper and prejudicial remarks throughout the trial.

## A

Defendant assigns error to the prosecutor eliciting from Detective Carrone the fact that defendant was arrested for the Rojas murder. Defendant also contends that the testimony of Officer Handzel regarding defendant's brother Fidel was prejudicial with no probative value. Defendant failed to object at trial to this questioning; thus, the issue is waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Defendant additionally assigns error to the prosecutor mentioning during closing rebuttal argument the Rojas murder. The trial judge sustained defendant's objection and instructed the jury to disregard the remarks. Thus, the error was cured. *People v. Lloyd* (1981), 93 Ill. App. 3d 1018, 1025, 418 N.E.2d 131, 136.

## B

Also during his closing rebuttal argument, the prosecutor reflected on the absence of certain witnesses and suggested that defendant could have called them to appear. The trial judge sustained defendant's objection and instructed the jury. Thus, the error was cured. *Lloyd*, 93 Ill. App. 3d at 1025, 418 N.E.2d at 136.

## C

During his opening statement and closing argument, the prosecutor remarked that Schiller Park police spoke with unknown persons in investigating the Musto and Pagano murders. Defendant also assigns error to the prosecutor remarking during closing rebuttal argument that defendant was responsible for the crime. Defendant failed to object to these statements at trial; thus, these issues are waived. *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.

## D

The prosecutor remarked during closing argument that McQuiston's life was in danger after cooperating with the police in their investigation. Defendant argues that the prosecutor improperly inferred that he (defendant) threatened McQuiston. A prosecutor is allowed wide latitude in closing argument as long as his comments are based on the evidence or reasonable inferences therefrom. (*People v. Piscotti* (1985), 136 Ill. App. 3d 420, 441, 483 N.E.2d 363, 378.) After reviewing

the record, we conclude that this remark was a reasonable inference from the evidence. We hold that none of the prosecutor's remarks, considered individually or cumulatively, denied defendant a fair trial.

## VII

██ Defendant claims that he did not receive a fair trial because the jury did not have the tape recording of the telephone conversation between defense counsel and McQuiston in the jury room during its deliberations. This determination was within the sound discretion of the trial judge; it will not be disturbed unless it constitutes an abuse of discretion resulting in prejudice to the defendant. *People v. Fernandez* (1978), 66 Ill. App. 3d 103, 105, 383 N.E.2d 663, 665.

As mentioned earlier, the tape was played during trial. The record shows that the jury had an edited transcript of the conversation, with all references to Slaughter deleted. This was sufficient. We find no abuse of discretion.

## VIII

 ██ Defendant lastly claims that he did not receive a fair trial because the trial judge refused his proffered jury instruction. Defendant tendered a non-Illinois Pattern Jury Instruction (hereinafter IPI) regarding the testimony of an informer. The trial judge refused the instruction. He ruled that: (1) McQuiston was not an informer; and (2) as a result, IPI Criminal No. 1.02 (2d ed. 1981) adequately advised the jury of the applicable law.

The decision whether to give a tendered non-IPI instruction rests within the sound discretion of the trial court. Further, the trial court may properly refuse a non-IPI credibility instruction where an IPI instruction is given which adequately addresses the same issue. *People v. Barnes* (1983), 117 Ill. App. 3d 965, 975, 453 N.E.2d 1371, 1380.

The record in the case at bar shows that McQuiston was a witness as any other; he was not an informer. Therefore, IPI Criminal No. 1.02 (2d ed. 1981) was sufficient. (See *People v. Melchor* (1989), 180 Ill. App. 3d 372, 375-76, 534 N.E.2d 1082, 1084-85.) We find no abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.