THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES COLLINS, Defendant-Appellant.

First District (6th Division)   No. 1—91—0180

Opinion filed March 20, 1992.

Randolph N. Stone, Public Defender, of Chicago (Mary C. Arundel, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica Calderon, and Christopher Daddino, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a jury trial in the circuit court, defendant Charles Collins was found guilty of burglary and theft. He was sentenced to a term of six years on the burglary count and 364 days on the theft count, the sentences to run concurrently. The issues raised on appeal are: (1) whether the trial court erred in denying defendant's motion *in limine* to preclude the State from introducing evidence of defendant's 1986 theft conviction; (2) whether the trial court improperly restricted cross-examination of the State's witness; (3) whether the trial court erred in not allowing a defense witness to testify regarding the complainant's prior efforts to evict defendant; (4) whether the trial court erred in not allowing defendant's proposed jury instruction; and (5) whether prosecutorial misconduct during closing argument denied defendant the right to a fair trial. We affirm.

The complainant, Karen McDonald, her three children and her fiance, Frank Kilmek, lived in an apartment at 4100 West Grenshaw in Chicago. The apartment was in a three-story building which had two entrances. McDonald's mother owned the building and McDonald was the building manager. The defendant also lived in the building. Sometime in January 1990, Kilmek, McDonald and her three children left the apartment to stay with McDonald's mother because there was no heat or electricity. However, they left all of their belongings in the apartment and returned every day to check their mail. On February 23, 1990, at approximately 2:45 p.m., Kilmek was at the building getting the mail when he heard a door close. He asked who was there, and a male voice answered "James." Kilmek then went upstairs, where he found defendant standing at the door of McDonald's apartment. Defendant had a trench coat over his arm and was carrying a pillow case filled with various items. When defendant saw Kilmek he put the pillowcase down, pulled a gun from his pocket, and told Kilmek to step back so that he could get out of the building. Mc-

Donald arrived at the building at this time and was halfway between the gate and the building entrance when defendant ran past her. Kilmek came out a few seconds later and told McDonald to call the police. After the police were contacted, McDonald and Kilmek retrieved the trench coat, which belonged to Kilmek, and the pillowcase, which contained various items belonging to McDonald. Inside the pillowcase were two walkmen, a car radio, and some canned goods. McDonald and Kilmek also noted that the burglar bars in the apartment doorway were bent and the wood surrounding the door lock was broken. According to her trial testimony, McDonald was unable to thoroughly search the apartment on the day of the incident but she did tell the police that some items of clothing, a videocassette recorder, television, amplifier and turntable were included in the property taken.

Detective Carroll apprehended defendant several days after the incident as defendant was leaving the building at 4100 West Grenshaw. After being advised of his *Miranda* rights and the reason for his arrest, defendant stated "so the bitch called the police on me." Following defendant's arrest, his apartment was searched and several items were confiscated, including a travel bag, purse, electric heater, and two-burner hotplate. On February 28, 1990, McDonald and Kilmek went to the police station where they identified the items taken from defendant's apartment as their property.

McDonald testified that she had known defendant since November 1988, when he had moved into the building. She initially helped defendant with his apartment, but their relationship, which she described as strictly friendly, eventually deteriorated, and she tried to get him out of the building. McDonald signed a theft complaint against defendant in August 1989.

Kilmek testified that he was present when McDonald and defendant argued, and he knew that she wanted defendant out of the building.

Defendant's brother, Ricky Collins, testified in defendant's behalf that McDonald was initially in defendant's apartment most of the time but that their relationship changed when McDonald began demanding money from defendant. McDonald then began calling the police and reporting that defendant was stealing. He testified that McDonald used a circuit breaker to turn off the lights in defendant's apartment. Although Ricky Collins stated that defendant had a hotplate in the apartment as well as a "radiator," and that the "purses" found in the apartment belonged to a man and woman who had lived in the apartment for a period of time, on cross-examination he could

not say how many purses were in the apartment or describe any of them. He also stated that defendant's hotplate had one burner and that the portable heater was kerosene rather than electric.

Defendant testified that when he first moved into the building he had an agreement with McDonald that he would serve as the building maintenance man in exchange for not paying rent. He acknowledged on cross-examination that he stopped performing maintenance duties by June 1989, but did not pay any rent until February 1990. Defendant stated that he and McDonald had been lovers but when their relationship deteriorated, McDonald started calling the police and accusing defendant of stealing property. Defendant denied seeing McDonald and Kilmek in the building on the afternoon of February 23, 1990.

Defendant first contends that the trial court's denial of his motion *in limine* was error because the evidence of his misdemeanor retail theft conviction was more prejudicial than probative. Defendant filed a motion *in limine* to preclude evidence of a misdemeanor theft conviction which occurred in 1986. The State sought to introduce this evidence to impeach defendant's credibility. The State maintains that the trial court's denial of defendant's motion was not error where it was based on proper consideration of the *Montgomery* factors.

In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, the Illinois Supreme Court adopted the provisions of Rule 609 of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States as a standard for impeachment by evidence of a prior conviction. The rule provides in part as follows:

" '(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from confinement, whichever is the later date.' " (*Montgomery,* 47 Ill. 2d at 516, quoting 51 F.R.D 391.)

The *Montgomery* court also noted that the trial judge is vested with discretionary authority to determine if the evidence should be admit-

ted based on an assessment of whether the probative value outweighs the danger of unfair prejudice. (*Montgomery*, 47 Ill. 2d at 516-17. See also *People v. McKibbins* (1983), 96 Ill. 2d 176, 187-88, 449 N.E.2d 821; *People v. Moman* (1990), 201 Ill. App. 3d 293, 314, 558 N.E.2d 1231.) In *People v. Washington* (1984), 127 Ill. App. 3d 365, 468 N.E.2d 1285, the court held that evidence of the defendant's prior misdemeanor convictions, although otherwise improperly admitted, was harmless where the jury was instructed that such evidence was admitted only on the issue of defendant's credibility and the evidence did not contribute to defendant's conviction. *Washington*, 127 Ill. App. 3d at 384.

■■ In this case, the evidence of defendant's prior conviction was properly admitted under the factors set forth in *Montgomery* where, although the conviction was for misdemeanor theft, which was punishable by imprisonment for less than one year, the crime of misdemeanor theft is one involving dishonesty. (*People v. Spates* (1979), 77 Ill. 2d 193, 202-03, 395 N.E.2d 563.) Another factor supporting the admission of this evidence was the proximity of the conviction to the instant offense which was four years earlier and well within the 10-year time limit in *Montgomery*. Finally, although misdemeanor theft is similar to burglary and theft, defendant was not unfairly prejudiced by the admission of this evidence where the trial judge specifically instructed the jury to consider the evidence "only insofar as it may affect his [defendant's] believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged." Therefore, we cannot say that the trial court's denial of defendant's motion *in limine* was an abuse of discretion.

Defendant also claims that the trial court improperly restricted his cross-examination of State's witness Karen McDonald and that he was precluded from showing the jury that McDonald had filed false charges against him. While the general rule is that a witness may be cross-examined on matters that would show bias or motive to testify falsely (*People v. Thompkins* (1988), 121 Ill. 2d 401, 441, 521 N.E.2d 38), the scope of cross-examination is within the discretion of the trial judge and is only subject to review where there has been an abuse of discretion which results in prejudice to defendant. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 831, 447 N.E.2d 1029; *People v. Richard* (1980), 90 Ill. App. 3d 322, 330, 413 N.E.2d 5.) However, the discretionary authority of the trial court to restrict the scope of cross-examination arises only after sufficient cross-examination to satisfy the constitutional guarantee has been permitted. (*People v. Maldonado*

(1989), 193 Ill. App. 3d 1062, 1069, 550 N.E.2d 1011; *People v. Rufus* (1982), 104 Ill. App. 3d 467, 472, 432 N.E.2d 1089.)

"To determine the constitutional sufficiency of cross-examination, a court looks not to what a defendant had been prohibited from doing, but to what he had been allowed to do. If the entire record shows that the jury had been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because defendant had been prohibited on cross-examination from pursuing other areas of inquiry." *Maldonado,* 193 Ill. App. 3d at 1069.

In this case, the trial court's restriction of defendant's cross-examination of McDonald was not an abuse of discretion where he was given an opportunity to show the witness' motive to testify against him. During his cross-examination of McDonald, defense counsel was allowed to cross-examine the witness regarding the fact that she wanted defendant out of the building and that she had called the police and had signed a theft complaint that he had taken property from the building. However, when defense counsel tried to question McDonald regarding the fact that the case was dismissed, the State's objection was sustained, and defense counsel was restricted from inquiring further into the disposition of the theft complaint. Although a defendant is entitled to question a witness on any matter which would explain, modify or discredit the witness' testimony, the evidence sought must make a proposition at issue more or less probable. (*People v. Yuknis* (1979), 79 Ill. App. 3d 243, 248, 398 N.E.2d 258.) While the dismissal of the theft complaint may have resulted from a lack of evidence, it may just as likely have been for other reasons not related to the merits of the charges. Because defense counsel's cross-examination was only limited where the information sought was uncertain and potentially misleading, the trial court did not abuse its discretion in restricting this aspect of defense counsel's cross-examination.

Defendant further claims that the trial court improperly restricted his cross-examination of McDonald regarding her use of the criminal rather than circuit court in her attempt to evict defendant. However, as discussed above, defendant was allowed to question McDonald on her previous charges against him and her desire to have him out of the building. Defendant's attempt to question the witness regarding forum selection was speculative, irrelevant and collateral and would tend to confuse the jury in its efforts to reach a proper verdict. (*People v. Cruz* (1987), 164 Ill. App. 3d 802, 812, 518 N.E.2d

320.) Therefore, the trial court's restriction of this line of questioning was also not an abuse of its discretion.

■ The defendant also alleges as error the trial court's restriction of his direct examination of Ricky Collins regarding McDonald's prior complaints to the police as this testimony would show that McDonald filed charges against defendant in order to evict him from the building. Ricky Collins lived with defendant during the time that McDonald filed charges against defendant. When defense counsel, during direct examination, tried to elicit testimony as to why McDonald called the police on defendant, the trial court sustained the State's objection. We conclude that where such testimony required the witness to speculate on the motives of two other people which could result in information that was remote and uncertain, the trial court did not abuse its discretion in choosing to reject such evidence as of little probative value. *People v. Castro* (1989), 190 Ill. App. 3d 227, 239, 546 N.E.2d 662.

Finally, we note that the trial court's ruling did not deny defendant his right to adequately develop his defense where Ricky Collins was allowed to testify that McDonald had called the police to complain about defendant on several occasions as well as other conflicts between McDonald and defendant. The jury was thus apprised of the nature of McDonald's relationship with defendant as well as any potential bias or motive that McDonald might have to testify falsely.

Defendant next contends that the trial court erred in not allowing his proposed jury instruction because a question existed regarding who owned the property listed in the theft indictment. Defendant argues that when McDonald initially contacted the police on February 23, 1990, she did not include a hotplate, electric heater, travel bag or purse among the items taken. These items were subsequently found in defendant's apartment. Although McDonald and Kilmek identified the items as their property, defendant claimed during his trial testimony that the property belonged to him. Defendant also argues that there was no proof of ownership regarding the other items that McDonald reported missing from her apartment. Thus, according to defendant, it was error for the trial court to refuse defendant's tendered instruction.

The jury instruction requested by defendant was a non-Illinois Pattern Jury Instruction (IPI) which stated that:

> "Proof that someone other than defendant owns allegedly stolen property is an essential element to the offense of theft."

Illinois Supreme Court Rule 451(a) provides in relevant part that:

"Whenever Illinois Pattern Instructions, Criminal (2d ed. 1981) (IPI Criminal 2d), contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI Criminal 2d instruction shall be used, unless the court determines that it does not accurately state the law." (134 Ill. 2d R. 451(a).)

(See also *People v. Brooks* (1989), 185 Ill. App. 3d 935, 942, 542 N.E.2d 64.) The decision whether to give a non-IPI instruction is within the discretion of the trial court, and the court may properly refuse such an instruction where an IPI instruction is given which addresses the same issue. *Maldanado,* 193 Ill. App. 3d at 1072.

■ One of the instructions given to the jury was IPI Criminal 2d No. 13.02, which states in relevant part:

"To sustain the charge of theft, the State must prove the following propositions:

*First*: That Karen McDonald and Frank Kilmek [were] the owners of the property in question; and

*Second*: That the Defendant knowingly obtained [and] exerted unauthorized control over the property; and

*Third*: That the defendant intended to deprive Karen McDonald and Frank Kilmek permanently of the use or benefit of the property."

This instruction adequately covered the same subject matter contained in the instruction defendant requested where it specifically informed the jury that the State had to prove that McDonald and Kilmek (someone other than defendant) owned the property at issue. In addition, IPI Criminal 2d No. 1.02, which was also given to the jury, addressed the issue of the credibility of the witnesses. That instruction states:

"You are the sole judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in this case.

You should judge the testimony of the defendant in the same manner as you judge the testimony of any other witness." (IPI Criminal 2d No. 1.02.)

While defendant claims that the instruction requested by defense counsel should have been allowed where a question existed as to who

owned the property found in his apartment, the issue was adequately addressed by IPI Criminal 2d No. 13.02, and the jury was also instructed regarding the credibility of the witnesses in IPI Criminal 2d No. 1.02. Therefore, the trial court did not abuse its discretion in refusing to allow defendant's proposed non-IPI jury instruction.

Defendant lastly contends that he was denied a fair trial by the prosecutor's misconduct during closing argument because the prosecutor misstated the evidence and improperly defined the State's burden of proof. Generally prosecutors have wide latitude to comment on evidence and draw reasonable inferences therefrom and, absent a clear abuse of discretion, a court's rulings on the propriety of these comments will not be disturbed on review. (*People v. Rockman* (1986), 144 Ill. App. 3d 801, 813, 494 N.E.2d 688.) Prosecutors may not, however, misstate facts or argue facts not in evidence. (*People v. Beier* (1963), 29 Ill. 2d 511, 517, 194 N.E.2d 280.) Even so, these remarks do not mandate a reversal "unless they are so prejudicial as to constitute a material factor in defendant's conviction." *People v. Townsend* (1985), 136 Ill. App. 3d 385, 394, 483 N.E.2d 340, citing *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.

■ Defendant first argues that the evidence misstated by the prosecutor was his comments that five days elapsed between the time that McDonald reported a television set and video cassette recorder missing and when the police arrested defendant and that was enough time in which defendant could have sold these items on the street. Defendant argues that there was no evidence to support the inference that defendant sold the missing items on the street and that it was prejudicial. However, the prosecutor's comments were made in response to comments by defense counsel in closing argument which implied that because the missing items were not found in defendant's apartment, McDonald's allegation that defendant took the items was not credible. Thus, defendant cannot claim error where the allegedly improper comments were in reply to and invited by defense counsel's argument and where those arguments invited response and comment on the credibility of a witness. (*People v. Morando* (1988), 169 Ill. App. 3d 716, 733, 523 N.E.2d 1061; *People v. Bunch* (1987), 159 Ill. App. 3d 494, 515, 512 N.E.2d 748.) Additionally, any potential prejudice to defendant was cured by the trial court's instructions to the jury that closing arguments by the attorneys were not evidence and that any comments not based on the evidence presented should be disregarded.

Defendant further argues that the prosecutor improperly attempted to define reasonable doubt and also incorrectly argued that

the State did not have the burden to prove defendant's guilt beyond every single doubt. The comment which defendant cites as error was made in the context of the following passage:

"There has been a lot of talk about the burden of proof, and the burden of proof being beyond a reasonable doubt. The State accepts that burden, but we also inform you that the burden is not beyond every doubt, that burden is not beyond every single doubt, it's beyond, were to equal let's say ten pounds, the State would have to prove, show you ten pounds, ten pounds of evidence."

Defense counsel objected, and the court sustained the objection. The State continued to argue:

"The State does not have to show that every single doubt in your mind be erased, they just have to show you this defendant is guilty beyond a reasonable doubt, and we did that by the testimony of our witnesses, our credible witnesses."

In *People v. Phillips* (1989), 127 Ill. 2d 499, 538 N.E.2d 500, the court held that similar comments by the prosecutor were not improper. The prosecutor in that case stated:

"Ladies and gentlemen, suffice it to say it is not proof beyond all doubt, it is not proof beyond any doubt, it is proof beyond a reasonable doubt." *Phillips*, 127 Ill. 2d at 528.

■ In this case, the trial court sustained defense counsel's objection to the portion of the prosecutor's statements equating the State's burden of proof to "ten pounds of evidence." The remaining comments were only a restatement of the "beyond a reasonable doubt" standard which the *Phillips* court held was not improper. *Phillips*, 127 Ill. 2d at 529.

Defendant cites *People v. Ellis* (1985), 134 Ill. App. 3d 924, 481 N.E.2d 320, and *People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E.2d 103, for the proposition that it is improper for the court or counsel to define reasonable doubt. In *People v. Ellis*, the prosecutor's comment was:

"We have the burden of proving the defendant guilty beyond a reasonable doubt. This does not mean beyond the possibility of a doubt or a shadow of a doubt. There is a possibility of some." (*Ellis*, 134 Ill. App. 3d at 926.)

The court held that while such comments should be avoided, the comments were not prejudicial. In *People v. Eddington*, the prosecutor's comments regarding reasonable doubt were as follows:

"A reasonable doubt means just that. It does not mean beyond all doubt. As long as you may have some doubt as to what ex-

actly occurred, that doesn't mean the defendant is not guilty. That presumption of innocence vanishes as soon as you take your jury votes and the defendant is convicted. That's a presumption, nothing more. Don't let reasonable doubt stop you. That's doubt based upon reason." (*Eddington*, 129 Ill. App. 3d at 780.)

The court held that the above comments by the prosecutor were improper and, further, that it was improper for the court or counsel to define reasonable doubt.

Comparing the comments of the prosecutors in these three cases, the comments in this case were more like those in *Phillips* and *Ellis* than *Eddington*. We, thus, conclude that the comments were not improper and, further, that any existing error was cured by the trial court's instruction to the jury on the purpose of closing argument and the proper burden of proof. *People v. Scott* (1990), 194 Ill. App. 3d 634, 645, 551 N.E.2d 288.

For the reasons set forth above, the judgment of the circuit court is affirmed.

Affirmed.

EGAN, P.J., and LaPORTA, J., concur.