THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FABIAN BRANDON, Defendant-Appellant.

First District (3rd Division)   No. 1—90—0404

Opinion filed March 10, 1993.

Rita A. Fry, Public Defender, of Chicago (Kim L. Sorrells and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara Jones, and Carolyn A. Reynolds, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Fabian Brandon was convicted and sentenced to concurrent terms of 54 years for murder, 30 years for attempted murder, 30 years for armed robbery and 15 years for attempted armed robbery committed on three victims in a parked car.

Defendant asserts on appeal that: (1) the trial court improperly limited defense counsel's cross-examination of a State's witness,

which impaired defendant's efforts to establish that defendant's confession was false; (2) the prosecutor made improper comments during rebuttal closing argument that unduly prejudiced the jury; (3) the trial court improperly limited defense counsel's closing arguments with respect to reasonable inferences to be drawn from the evidence; and (4) the trial court improperly weighed the facts and circumstances of defendant's case and the statutory criteria when it imposed defendant's sentence.

We affirm defendant's convictions.

At approximately 1 a.m. on July 9, 1988, Ramiro Benitez, Armando Delgado and Antonio Mejia sat talking and drinking beer in a parked car outside of the house where the three lived, near the southwest corner of the intersection of Western Avenue and Wabansia Street. Benitez testified that he observed two Latino men and one black man looking at various cars on the street, and later saw one of the Latino men talking to a boy on a bicycle, James Day. The black man, identified in court as defendant, approached the driver's side of Benitez's car, and the third man the passenger side.

Defendant leaned into the window at the driver's side, where Benitez sat, placed a pistol to Benitez's temple, demanded money and struck Benitez in the head with the barrel of the gun. Defendant received $5 from Benitez, searched his pockets, then struck him twice in the head when no additional money was found. Defendant also tried unsuccessfully to yank off the gold chain that Benitez wore around his neck. Defendant then walked around to the passenger side of the car and Benitez heard two shots and immediately observed defendant and two others run west on Wabansia Street. Delgado was wounded, and Mejia later died of gunshot wounds. Benitez identified defendant from police photograph books.

James Day testified that while riding his bicycle home at approximately 3:50 a.m. on the date of the incident, he stopped to talk to a Latino man whom he knew only as "Learch." Day testified he had previously been a member of the Maniac Latino Disciples gang and knew Learch from the gang. Learch told Day, "We're going to make a hit," which Day understood to mean that Learch and his companions were going to rob someone.

Day observed a car parked in the place where Benitez testified that he had parked and saw defendant approach the car from the rear while a short, stocky Latino man approached the passenger side of the car. Defendant leaned into the driver's side window and talked to the people in the car. Learch then told Day to "pull up," which Day knew meant that he was being ordered to leave the

area. Day testified that he had seen defendant, a member of the Maniac Latin Disciples, around the neighborhood for about one year, but they were not friends.

As Day moved to leave, he saw defendant run from the driver's side of the car to the passenger side. While defendant stood at the passenger side of the car, Day heard two shots and saw defendant and the others run away. The next morning, Day also identified defendant from a police photograph book.

Detective Dorsch testified that after defendant was identified, Calvin Brandon, defendant's brother, was questioned at the police station in an attempt to locate defendant. Later in the day, defendant was arrested, interviewed, informed that he had been identified as the shooter, and advised of his *Miranda* rights. Assistant State's Attorney Lynn Kawamoto testified that she also advised defendant of his *Miranda* rights, then took defendant's court-reported statement which he reviewed, signing each page after making corrections, and which statement was received in evidence and read to the jury.

In that statement, defendant claimed that at the time of the incident, he was with "Junie," his girlfriend's brother, and Edwin, also known as "Learch," and that they were approached by three men in a car seeking to purchase marijuana. Learch left and obtained a gun, giving it to defendant when he returned so that the three could rob the men. Defendant approached the driver's side of the car while Junie approached the passenger side and Learch stood on the corner talking to a male on a bicycle. Defendant then held the gun to the driver's head and received money from the driver. Junie then asked for the gun because the passenger in the front seat refused to give him any money. Although Junie held the gun, the passenger still refused to accede to his demands and the weapon was returned to defendant. Defendant pointed the gun at the passenger in the front seat, the passenger pushed the gun out of his face and the gun discharged, a bullet hitting the passenger in the back seat. Defendant then aimed the gun at the front seat passenger and fired again, striking the front seat passenger. All three of the defendants ran, and defendant gave the gun to Learch. This is the statement upon which defendant now wishes to cast a shadow.

■ Defendant first argues that the trial court improperly limited defense counsel's cross-examination of Benitez, a State's witness, regarding whether Benitez and the two other men asked defendant if they had any marijuana. Defendant contends that his

counsel could properly question Benitez about the attempted purchase in order to impeach defendant's statement as untrue.

The relevant portion of Benitez's cross-examination as shown in the record:

"[Defense Counsel]: During the time that these men were around your car, did you have any conversation about marijuana?

[Benitez]: No.

[Defense Counsel]: Did any police officers ever ask you if you were there to buy any marijuana?

[Prosecutor]: Objection.

[THE COURT]: Let me have a sidebar on this. What is the objection?

[Prosecutor]: He can't perfect it, Judge.

[Defense Counsel]: [Defendant] says in his statement they were there to buy marijuana and came to ask them about marijuana.

[THE COURT]: They who?

[Defense Counsel]: These people. So we are going to allege that part of [defendant's] statement is incorrect. What I am trying to do with this guy is ask him whether or not the policemen asked if marijuana was involved.

[THE COURT]: That wasn't the question.

[Defense Counsel]: I asked him whether or not marijuana was involved.

[THE COURT]: That's not the way to do it.

[Defense Counsel]: I will have to call him back.

[THE COURT]: The last question and answer, if there was one, are struck; and the jury is instructed to disregard it."

The record does not support defense counsel's contention that the trial court prohibited questioning regarding a possible marijuana sale since the court allowed Benitez to answer defense counsel's question regarding whether Benitez had talked to the defendant about marijuana.

We disagree with defendant that defense counsel was prohibited from any further examination on that point. The record demonstrates that the trial court was merely pointing out that defense counsel's procedure in questioning the witness was improper, and even defense counsel recognized that he could recall the witness and then attempt to use the testimony then elicited to impeach the veracity of defendant's signed statement.

We reject defendant's contention that his constitutional rights were violated. The confrontation clause of the sixth amendment of the Constitution guarantees a defendant the right to cross-examine a witness against him for the purpose of showing the witness' bias, interest or motive to testify falsely. *People v. Harris* (1988), 123 Ill. 2d 113, 144, 526 N.E.2d 335.

In determining the constitutional sufficiency of cross-examination allowed in a criminal case, a reviewing court looks not merely to what defense counsel was prohibited from doing, but to what defense counsel was allowed to do; if the jury was aware of adequate factors concerning relevant areas of impeachment of the witness or, in this case, defendant's sworn statement, no constitutional question arises merely because defendant was prohibited on cross-examination from pursuing other areas of inquiry which here were beyond the scope of direct examination. *People v. Maldonado* (1989), 193 Ill. App. 3d 1062, 1069, 550 N.E.2d 1011.

Once the constitutional sufficiency of cross-examination is met, the trial court, exercising its sound discretion, determines the scope of the cross-examination, and its decision will not be disturbed absent an abuse of that discretion. *People v. Sandoval* (1990), 135 Ill. 2d 159, 552 N.E.2d 726.

A reviewing court need not examine only the particular limitation imposed upon the cross-examination to determine whether reversible error has occurred. Rather, it must determine in each case whether defendant's inability to make the inquiry "created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony." (*Harris*, 123 Ill. 2d at 145.) Here, the jury was made aware of adequate factors to determine whether defendant's charge that his confession was false was worthy of belief. *Maldonado*, 193 Ill. App. 3d at 1069.

Further, had the trial court erred in restricting the scope of cross-examination, such error was harmless since the evidence against defendant was overwhelming. (*People v. White* (1989), 192 Ill. App. 3d 55, 62, 548 N.E.2d 421.) The victim Benitez identified defendant as his attacker, and eyewitness Day identified defendant as the person who approached Benitez's car, robbed the passengers and ran from the car after shots were fired. Defendant's court-reported statement corroborated the witnesses' testimony regarding the robberies and shootings.

Defendant next contends that during closing arguments, the prosecutor prejudiced defendant by (1) stating a lesser burden of proof for the State; (2) injecting his opinion; and (3) making com-

ments not based on evidence while sitting in an empty chair at the defense table addressing defendant.

■ Regarding his first charge, the record states:

"[Prosecutor]: Judge Neville has instructed you as to the law. It's beyond a reasonable doubt. That's a burden we welcome. It's a burden we meet. It's a burden that's met in every courtroom in this courtroom, [*sic*] in every courtroom of every city of state.

[Defense Counsel]: Objection to the burden being met in every courtroom.

[THE COURT]: It's the burden that's required in every case.

[Prosecutor]: It's a burden that's met in every state, every courtroom in this building. It's a burden that every man who has been convicted and sitting in jail is convicted by."

We do not find the comment, "it's a burden that's met in every state, every courtroom in this building," reduces the State's burden or shifts the burden to defendant. First, the trial judge adequately apprised the jury that the burden upon the State must be beyond a reasonable doubt in every case.

Secondly, a similar comment made by the prosecutor in *People v. Bryant* (1983), 94 Ill. 2d 514, 523, 447 N.E.2d 301, wherein he stated that the State's burden was "not unreasonable" and "met each and every day in courts" was not held to be prejudicial. Also, in *People v. Woods* (1988), 173 Ill. App. 3d 244, 250, 527 N.E.2d 485, the prosecutor's comment was not prejudicial when he argued that the burden of proof prevailed in criminal trials "every day, all year, all the time."

■ Defendant also charges that the prosecutor improperly stated his own opinion about the quality of the police investigation in rebuttal closing argument and voiced his feelings that he was "rather proud of the officers."

The record is clear that the prosecutor's intent in the present case was to respond only after defense counsel invited such argument regarding the quality of the police investigation in his closing argument.

In closing argument, the prosecution may base its argument on the evidence presented or its reasonable inferences, and, in addition, respond to comments by defense counsel which clearly invite or provoke response, denounce the activities of defendant and highlight inconsistencies in defendant's argument. *People v. Graca* (1991), 220 Ill. App. 3d 214, 221, 580 N.E.2d 1328.

■ Defendant next argues that it was reversible error when the prosecutor sat in an empty chair during rebuttal closing argument and allegedly yelled at the defendant, saying:

> "[Prosecutor]: All the time [the defendant has] got the gun to [Benitez's] face. This is within—he was this far away from his face.
>
> [Defense Counsel]: Objection, this is wrong.
>
> [THE COURT]: [Defense Counsel], sit down. [Prosecutor], come over here and complete your argument."

While a prosecutor may properly comment on evidence presented or make reasonable inferences based upon that evidence, the prosecutor here engaged in some unnecessary courtroom theatrics. However, the trial court cured any impropriety by quickly directing that the prosecutor discontinue such action at the defense table. We cannot say that defendant was denied a fair trial because of the prosecutor's action, especially given the overwhelming evidence against him. *White*, 192 Ill. App. 3d at 62.

■ Nor can we say that defendant was denied a fair trial where the prosecutor ridiculed defendant, claiming that defendant attempted to blame his brother for the offense:

> "You have also seen the cowardice on the part of this [defendant] that hunts in a pack like a wolf. And take the life of a human being Antonio Mejia. He even tries to blame his brother Calvin Brandon.
>
> [Defense Counsel]: Objection.
>
> [THE COURT]: Sustained."

*People v. Johnson* (1987), 119 Ill. 2d 119, 139, 518 N.E.2d 100, states that while it was improper for the prosecutor to refer to the defendant as an "animal," it was not prejudicial where the jury was specifically instructed that closing arguments were not evidence and to disregard any statements made during arguments which were not based upon evidence. There, the comment was an isolated remark not dwelled upon by the prosecutor, and the evidence was not closely balanced.

Similarly in the case at bar, the trial court instructed the jury that closing arguments were not evidence and any statements or argument made by the attorneys which is not based on the evidence should be disregarded. Here, too, it was an isolated remark upon which the prosecutor did not dwell and the evidence was not closely balanced against defendant and the trial court sustained defendant's objection.

■ We further find no cumulative prejudicial impact from the prosecutor calling defendant a wolf and in giving his opinion that he was proud of the police work in the case. Neither separately nor together do these two comments constitute a "material factor" in defendant's convictions. *People v. Whitlow* (1982), 89 Ill. 2d 322, 341, 433 N.E.2d 629.

■ Defendant next charges that the trial court improperly limited defense counsel's efforts to argue to the jury: (1) that the State's witness, Benitez, looked through only one gang photograph book before identifying defendant, but then continued to look at photographs; (2) that even though defendant, codefendant, and the State's witness, Day, were at one time members of the same gang and lived in the same neighborhood, Day did not know defendant or his name; and (3) that police used inadequate methods of investigation and they lacked physical evidence which defendant believed should have been discovered by the State.

Defendant contends that these statements were proper inferences based upon the evidence and defendant was prevented from noting the weaknesses in the State's case.

However, the defendant has waived these issues by failing to raise them in a post-trial motion (*People v. Reid* (1990), 136 Ill. 2d 27, 38, 554 N.E.2d 174), and we decline to consider these issues under the plain error rule since the evidence is not closely balanced against defendant nor do we find the error of such magnitude that defendant has been denied a fair trial. *People v. Young* (1989), 128 Ill. 2d 1, 47, 538 N.E.2d 453; *People v. Jackson* (1981), 84 Ill. 2d 350, 359-60, 418 N.E.2d 739.

■ Defendant next argues that the trial court erred in determining his sentence because it relied upon a fact not in evidence. The trial court observed that defendant "pistol whipped" Benitez in the car and defendant disputes that the evidence would justify such a conclusion.

While we are unsure of the defendant's definition of "pistol whipped," the record clearly establishes that defendant struck Benitez in the head with the barrel of his gun three or more times.

Lastly, defendant argues that the sentence of 54 years is excessive, the defendant being only 17 years old at the time of the crime with no prior convictions, although the record reveals allegations of the commission of other crimes.

A trial court's sentencing determination is accorded great deference, absent an abuse of discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) Reviewing courts consider various fac-

tors in determining whether the sentence imposed by the trial court was an abuse of discretion: the nature of the crime; protection of the public; deterrence; punishment; defendant's rehabilitative prospects; defendant's youth; criminal history; general moral character; mentality; social environment; and education. *People v. Trimble* (1991), 220 Ill. App. 3d 338, 580 N.E.2d 1209; *People v. Newell* (1990), 196 Ill. App. 3d 373, 553 N.E.2d 722.

A trial court may also consider in aggravation evidence of offenses which have been uncharged and for which there have been no convictions. (*People v. Richardson* (1988), 123 Ill. 2d 322, 528 N.E.2d 612; *La Pointe*, 88 Ill. 2d 482, 431 N.E.2d 344.) Thus the trial court in the present case may properly have considered defendant's uncharged criminal conduct to be in aggravation.

The trial court in this case sentenced defendant to 54 years for murder, within the 20- to 60-year range. The trial court found that defendant was the aggressor and leader in the situation: he sent Learch to get the gun; he decided to rob three men; he physically assaulted the victims; and he received the gun from Junie who, although armed, was apparently unable to control the victims and required defendant to fire the weapon at the victims. The trial court stated that defendant poses the gravest of dangers because his conduct is unpredictable in seeking crimes of opportunity and found that the victims did nothing to justify being shot by defendant.

The trial court gave a reasonable, detailed explanation of the basis for the sentence imposed and we find no abuse of discretion.

Defendant's convictions and sentences are affirmed.

Affirmed.

TULLY, P.J., and CERDA, J., concur.