THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BILLY TRULY, Defendant-Appellant.

First District (1st Division)    No. 1—99—0292

Opinion filed December 26, 2000.

218

Mark S. Stein, of Skokie, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Georgia A. Buglass, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Billy Truly, was convicted of the murders of Paul Lowe and Jarvanley Johnson. For the murders, the circuit court sentenced defendant to natural life imprisonment. We affirmed these convictions on direct appeal. *People v. Truly*, No. 1—96—1705 (1998) (unpublished order pursuant to Supreme Court Rule 23). Defendant filed a timely *pro se* petition seeking relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1998)). The circuit court dismissed the petition without an evidentiary hearing. Defendant appeals to this court, maintaining that: (1) he was denied his constitutional right to cross-examine a key prosecution witness as to her motive, interest and bias in testifying; (2) defendant's right to counsel at the lineup was violated; and (3) defendant received ineffective assistance by appellate counsel. We reverse and remand this case to the circuit court for an evidentiary hearing.

## BACKGROUND

Antoinette Bell was the State's only eyewitness to the double murder. Prior to trial, the State made a motion *in limine* to bar any of the officers from testifying that since the murders occurred Antoinette Bell had been arrested on misdemeanor charges which had been dismissed and that she received a sentence of supervision for criminal trespass to land a few weeks before she testified against defendant. The trial court granted the State's motion *in limine*.

The evidence at trial established that on August 8, 1992, at approximately 10 p.m., Lowe and Johnson were sitting on the front porch at 5846 South King Drive. As defendant and another man walked past the porch, Johnson made a comment to defendant about his girlfriend. Defendant replied, "Man, why you disrespecting me?" Defendant told Johnson that he was a member of the Gangster Disciples street gang and then walked away. Later that night, Johnson and Beverly Fowler walked to a nearby store and noticed defendant and another man. Johnson approached defendant and apologized to him. Johnson and Beverly Fowler returned to the apartment building. A short time later, a group of men walked toward the building and Johnson went to the front porch to meet them. Lenora Jones looked out her second-floor apartment window and heard someone say, "Disrespecting GD. You have to have a violation." Beverly Fowler announced that she had called the police. The men left the building but said that they would be back later.

A few hours later, Beverly Fowler looked out the window and watched as a group of people got out of the cars and saw Johnson and

Lowe run to the backyard. Beverly Fowler called the police. Antoinette Bell walked onto the back porch and saw defendant pull an 18-inch-long, 3-inch-wide pole from the car, approach Johnson and hit him in the head with the pole. Defendant then walked in the direction of Lowe. Bell heard sounds like somebody hitting a baseball bat. Defendant walked back over to Johnson, who was lying on the ground, and hit him again. He walked over to Lowe, and Bell heard the same sound. Defendant again walked over to Johnson, hit him in the head three times with the pole and drove off in a car.

At trial, Detective Regal testified that he found the bodies of Lowe and Johnson on the ground. He stated that Bell told police what she saw and described the defendant. However, she did not give her real name to the police. Bell identified defendant in a photo array four months later. She identified defendant in a lineup 13 months later. Detective Regal further testified that Beverly Fowler identified defendant as the man Johnson approached and apologized to earlier in the evening. Detective Regal testified that Bell was subpoenaed to appear in court to testify but she did not appear and as a result was arrested for contempt of court.

Bell testified that defendant was the only person she saw beating Lowe and Johnson with the pole. She further stated that she had never seen defendant before the night of the murders. She also testified that she was afraid when she spoke to the officers at the scene and when she was subpoenaed to testify in court. She stated that she was held in custody for almost a month until the day she testified at defendant's trial. During cross-examination, defense counsel asked Bell whether the assistant State's Attorneys made any promises to her if she testified at defendant's trial. Bell responded that she asked them if they could move her out of the state after she testified and that they had agreed to do so. She mentioned no other promises.

Following the cross-examination of Bell, the trial court heard Bell's contempt case. The assistant public defender representing Bell requested that the contempt charge against Bell be purged since Bell testified. The State agreed and withdrew its petition and the trial court purged Bell's contempt charge. The attorney representing Bell then asked the State when they expected to have Bell's airplane ticket ready. Defendant's counsel, upon hearing about the plane ticket for the first time, requested that he be allowed to recall Bell and question her as to whether any other promises were made to her by the State including the plane ticket and the purging of the contempt charge. Defense counsel further sought to recall Bell to ask Bell the destination for the plane ticket and where she stayed during the period from 1992 to the day of trial. The trial court denied defense counsel's

requests but allowed defense counsel to question Bell outside the presence of the jury about her expectation regarding the contempt charge.

Defendant presented an alibi defense that he was in Milwaukee, Wisconsin, when the murders took place. Defendant's former girlfriend, Clara Green, and family members testified that defendant was not in Chicago at the time of the murders. In rebuttal, Detective Winstead stated that when he questioned defendant about the murders in August 1992, defendant told him that he was in prison at the time of the murders. After Winstead reminded defendant that he had already been released from prison, defendant responded that he was out of town at the time that the murders occurred. However, defendant was unable to state where or with whom he was out of town.

The jury found defendant guilty of both the murders of Johnson and Lowe. Defendant was sentenced to natural life imprisonment. Defendant appealed, and his conviction and sentence were affirmed in an unpublished order. Thereafter, defendant filed a *pro se* postconviction petition consisting of approximately 100 pages and 50 pages of exhibits. The trial court ruled that defendant's claims were barred by waiver or *res judicata* and dismissed defendant's postconviction petition without an evidentiary hearing, finding the petition frivolous and patently without merit. Defendant appealed.

## ANALYSIS

■ Defendant contends that the circuit court erred in summarily dismissing his postconviction petition without an evidentiary hearing. A proceeding under the Act is not an appeal; it is a collateral attack on the prior judgment. *People v. Brisbon*, 164 Ill. 2d 236, 242 (1995). A defendant is not entitled to an evidentiary hearing on a postconviction petition as a matter of course. *People v. Albanese*, 125 Ill. 2d 100, 105 (1988). In order to survive summary dismissal, a petitioner under the Post-Conviction Act (Act) (725 ILCS 5/122—1 *et seq.* (West 1998)) needs to assert the gist of a constitutional claim. *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). However, the gist of a meritorious claim is not established by a bare allegation of deprivation of a constitutional right. *People v. Prier*, 245 Ill. App. 3d 1037, 1040 (1993). A defendant still must allege sufficient facts from which the trial court could find a valid claim of deprivation of a constitutional right. *People v. Ramirez*, 242 Ill. App. 3d 954, 958 (1993). A hearing is required only when the allegations of the petition, supported by the trial record and the accompanying affidavits, make a substantial showing of a violation of a constitutional right. *People v. Hobley*, 182 Ill. 2d 404, 427-28 (1998). All well-pleaded facts are taken as true at this stage; therefore, the summary dismissal of a postconviction petition is subject to *de novo* review. *Coleman*, 183 Ill. 2d at 380-81, 388-89.

■ The Act provides a remedy to criminal defendants who make a substantial showing that a violation of their federal or state constitutional rights occurred at the proceedings which resulted in their convictions, when such a claim has not been, and could not have been, adjudicated previously. *People v. Griffin*, 178 Ill. 2d 65, 72-73 (1997). Issues that were decided on direct appeal are barred by the doctrine of *res judicata* and issues that could have been raised on direct appeal, but were not, are deemed waived. *People v. Towns*, 182 Ill. 2d 491, 502-03 (1998). The doctrines of *res judicata* and waiver will be relaxed "where fundamental fairness so requires." *People v. Gaines*, 105 Ill. 2d 79, 91 (1984). Where the alleged waiver stems from the incompetence of appellate counsel, the doctrine is relaxed. *People v. Barnard*, 104 Ill. 2d 218, 229 (1984). The rule is also relaxed when the facts relating to the claim do not appear on the face of the original appellate record. *People v. Eddmonds*, 143 Ill. 2d 501, 528 (1991). A claim may survive waiver as the result of any one of these three exceptions. *People v. Whitehead*, 169 Ill. 2d 355, 372 (1996).

## I. Constitutional Violation of Right to Confront Witness

■ We first consider defendant's argument that his petition makes a substantial showing that he was denied his sixth amendment (U.S. Const., amend. VI) constitutional right to confront Antoinette Bell, the State's only eyewitness to the double murder, and to cross-examine her as to her bias, interest and motive in testifying. Defendant claims the trial court improperly restricted cross-examination of Bell in four areas: (1) Bell's three prostitution arrests, dismissed prior to defendant's trial, and her supervision for criminal trespass to land received just weeks before trial; (2) the fact that after the murders Bell continued to frequent the neighborhood where the murders occurred; (3) Bell's expectation of receiving a plane ticket from the State's Attorney's office in exchange for her testimony at trial; and (4) her expectation of leniency regarding a pending contempt charge. Although the record reflects that defendant failed to raise these issues on direct appeal, the application of waiver is relaxed in proceedings on a postconviction petition if fundamental fairness, as in this case, so requires. *People v. Steidl*, 177 Ill. 2d 239 (1997); *Gaines*, 105 Ill. 2d at 91.

## A. Restriction of Bell's Cross-Examination Regarding Arrests and Supervision

Defendant maintains that it was error for the trial court to grant the State's motion *in limine* prohibiting defense counsel from cross-examining Bell about three prior arrests for prostitution and her supervision for criminal trespass to land which she received a few

weeks before testifying against the defendant. Specifically, defendant contends that the allegations in his petition regarding trial court rulings which restricted his cross-examination of Bell establish a substantial showing of a violation of a constitutional right and thereby entitle him to a hearing on his postconviction petition.

■ Cross-examination may concern any matter that goes to discredit, modify, explain or destroy the testimony of the witness. *People v. Averhart*, 311 Ill. App. 3d 492 (1999). Limitation of a defendant's cross-examination of the bias, motive or interest of a witness may violate a defendant's constitutional right to confront the witnesses against him guaranteed by both the federal and state constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Therefore, a trial court should be unwilling to grant a motion *in limine* brought by the State if the result will be an evisceration of the defendant's theory of the case. *People v. Prevo*, 302 Ill. App. 3d 1038, 1050 (1999).

Before trial, defense counsel informed the court that he had subpoenaed five police officers to testify about Bell's arrests including criminal trespass to land for which she received supervision and three prostitution charges which were "SOL'd" (stricken with leave to reinstate). The State objected and argued:

"And questions like that, I think, are merely attempting to dirty up the witness. And they—she not been convicted of any felony, crime, nor has she been convicted of any misdemeanor cases that would go to her credibility like theft case or things of that nature.

In fact, the prostitution I think she has four entries on her rap sheet. I don't have a rap sheet in front of me. 3 of the arrests have been SOL'd. One was a criminal trespass to land, I believe. And in which she received supervision. And those arrests and the circumstances surrounding those arrests are not relevant whatsoever to her credibility as a witness."

Defense counsel responded that he wanted to elicit information about the arrests because they were relevant as they occurred close to the scene of the crime and could be used to impeach Bell's credibility. The court reserved its ruling for a later time. Following jury selection the State renewed its motion *in limine*. Defense counsel argued:

"It's not the arrest itself. But, if the witness testifies in a different manner that she's never been in that area where in fact the court would learn from looking at the arrest slips she had been arrested in that area. That she used a different name. That goes to her credibility."

The trial court responded:

"Well, first off, not her occupation. That's going to stay out, whatever her occupation is. That's number one. Number 2: What areas

she frequents is out. If, however, she says I was—I've never been in whatever area it is, and there's proof that she has been there, and has been arrested there, then that may come in. Use of aliases, I think, comes in. Okay. I think that goes to her credibility. The fact that she was arrested should not come in for any purpose. You know, I don't know what she's going to testify. I think what [defense counsel] is saying makes sense, if she says she's never been there before and in fact, she was arrested there, that's some proof she's been there."

Before the direct testimony of Bell, the trial court again reiterated its ruling. The court stated:

"At this time, just to go over again the motion *in limine* by the State was to keep out the—Miss Bell's—any prior arrests, any prior misdemeanor convictions. And anything to do with the location or being in a certain area on a certain date. *** The motion *in limine* is granted as to the arrests and the prior convictions. As to the location, we'll play it by ear. Before you ask any questions about any location, we'll have a sidebar."

The State contends that defendant has failed to support his allegation with documentation showing the existence of any agreement or expectations with respect to any of Bell's arrests. We note, however, during trial defense counsel was precluded from asking Bell anything about her prior criminal history. Consistent with the trial court's ruling, no information was elicited during either direct or cross-examination regarding Bell's prior criminal history. Here, Bell's prior arrests could have served two purposes during cross-examination. One purpose, articulated by defense counsel during trial and discussed in greater detail below, was to impeach Bell's direct testimony that she was too frightened to remain in the area after the murders. The other reason was to expose to the jury Bell's motivation for testifying against defendant, which related to Bell's credibility. Defense counsel was not allowed to determine whether the State gave Bell any special consideration regarding crimes she was charged with since the murders.

■ A criminal defendant has a fundamental constitutional right to confront the witnesses against him and this includes the right to conduct a reasonable cross-examination. *People v. Triplett*, 108 Ill. 2d 463, 474 (1985). Evidence that a witness has been arrested or charged with a crime is a proper subject for cross-examination where it would reasonably tend to show that the witness's testimony might be influenced by bias, interest or motive to testify falsely. *Triplett*, 108 Ill. 2d at 475-76. Contrary to the State's argument, a defendant need not show that a promise of leniency has in fact been made to the witness or that an expectation of special favor exists; rather, the evidence need

only give rise to the inference that the witness has something to gain or lose by testifying. *Triplett*, 108 Ill. 2d at 475-76. A jury is entitled to the details of the theory of defense so it can make an informed judgment, and thus the right to cross-examine is satisfied when counsel is permitted to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U.S. 308, 318, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1111 (1974).

■ In this case, the defense counsel was not allowed to question Bell as to whether she was offered supervision on the charge of criminal trespass to land in exchange for her testimony against defendant. Defense counsel was not allowed to cross-examine Bell as to whether the State dismissed the three prostitution cases in exchange for Bell's testimony against defendant. Defense counsel was prohibited from potentially providing evidence that could have supported the inference that the witness had something to gain or lose by testifying. A hearing is required when the allegations supported by the record make a substantial showing of a violation of a constitutional right. *Hobley*, 182 Ill. 2d at 427-28. These limitations on cross-examination alleged in the postconviction petition establish a substantial showing of a violation of defendant's constitutional right to confront Bell and probe her credibility as well as her motive, interest and bias. Accordingly, defendant is entitled to an evidentiary hearing on these issues.

### B. Limited Cross-Examination On Areas Frequented by Bell Since the Murders

■ In a related argument defendant contends that the trial court erred in limiting defendant's cross-examination regarding the areas that Bell frequented after the murders. If the entire record shows that the jury has been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because defendant has been prohibited on cross-examination from pursuing other areas of inquiry. *People v. Hines*, 94 Ill. App. 3d 1041, 1048 (1981). In the present case, when viewed within the total realm of cross-examination permitted, the limitation placed on cross-examining Bell about the neighborhood she frequented gains more importance as it potentially prevented defense counsel from eliciting facts relevant to Bell's credibility.

During direct examination Bell testified that on the day of the murders she gave police officers a fictitious last name and told them that she was a witness but did not provide any further information. She stated that she was frightened and hid in her boyfriend's apartment until police spoke to her. Bell also made arrangements with one

of the detectives to view a lineup, but when the detective came to pick her up, she hid in the house because she was scared. She continued to avoid the police until 13 months after the murders, when she finally went to the police station, viewed a lineup and identified defendant. Bell further testified that, two years later, she received a subpoena to testify at trial, but she failed to come to court because she was afraid.

On cross-examination, Bell stated that she hid from police because she was scared and that she asked to be relocated to another state after she testified against defendant. Defense counsel asked Bell whether she returned to the neighborhood where the murders occurred. Bell stated that she was "not sure" how many times she returned to the neighborhood but that it was "not many." Defense counsel, in an effort to impeach her, attempted further questioning:

"DEFENSE COUNSEL: When you went to the neighborhood this year were you alone or were you with anyone[?]

THE STATE: Objection, relevance.

THE COURT: Sustained.

DEFENSE COUNSEL: When you went to the neighborhood this year where did you go in that neighborhood?

THE STATE: Objection as to relevance.

THE COURT: Sustained.

DEFENSE COUNSEL: Did you go to the area by 5848 South King Drive?

THE STATE: Objection.

THE COURT: Overruled.

BELL: I went, it was around in that area.

DEFENSE COUNSEL: In fact, as recently as October 6th of this year you were at 5909 South Calumet weren't you?

THE STATE: Objection, Judge.

THE COURT: Sustained."

Defense counsel then stated that he was attempting to show Bell's familiarity with the area to which the trial court responded, "The jury understands. She said she was afraid, she said she has been back there since." The trial court instructed defense counsel to move to another line of questioning. Thus, the record indicates that defense counsel was allowed to elicit very limited testimony as to the fact that Bell returned to the neighborhood despite her alleged fear after the murders. The court sustained objections to three of the four questions asked by defense counsel, including a question as to whether Bell was in the neighborhood where the murders occurred as recently as October 6, which was three weeks before Bell testified against the defendant at trial.

To determine the constitutional sufficiency of cross-examination, a court looks not to what a defendant has been prohibited from doing,

but to what he has been allowed to do. *People v. Maldonado*, 193 Ill. App. 3d 1062, 1069 (1989). The facts that were elicited during cross-examination were that Bell hid from the police for 4 months before viewing a photo array and identifying defendant; she hid from police for nearly another year before viewing the lineup and she disregarded a subpoena to appear in court. She did all of these things, she testified, because she was afraid. Bell also requested that she be relocated to another state after she testified against defendant by the office of the State's Attorney. Juxtaposed against this testimony is the fact that Bell, after the murders and before trial, was arrested on four different occasions in the same neighborhood where her fear originated and from which she wanted to be relocated to another state. Moreover, as recently as three weeks before trial she was in the neighborhood where the murders occurred. These were facts that the jury never had a chance to hear. Although defendant was allowed some limited cross-examination as to whether Bell returned to the neighborhood, the defense was allegedly restricted in the impeachment of Bell with the fact that despite her fear she repeatedly returned to the neighborhood where the murders occurred. The limitation placed on this cross-examination as alleged in defendant's postconviction petition established a substantial showing of a violation of defendant's right to test the credibility of the only eyewitness in the case. See *Hobley*, 182 Ill. 2d at 427-28. Accordingly, defendant is entitled to an evidentiary hearing on these issues.

### C. Limitation of Cross-Examination of Bell Regarding Airplane Ticket

Defendant further contends that he was denied the right to probe Bell's motive for testifying by questioning her before the jury about the plane ticket she was promised by the State. Immediately following Bell's testimony, the case involving Bell's contempt charge was heard. During the hearing defendant's counsel learned, for the first time, that the State might have a plane ticket for Bell. The discussion was triggered by Bell's attorney:

> "BELL'S ATTORNEY: One thing I would inquire of the State if they have any timetable of when they might have a plane ticket.
>
> \* \* \*
>
> DEFENSE COUNSEL: Judge, I'm requesting that I be allowed to recall her.
>
> THE COURT: Okay.
>
> \* \* \*
>
> DEFENSE COUNSEL: As the Court recalls I asked the question were any promises made, it appears that I have learned about promise of plane ticket and drop of contempt I think that should fairly—

THE COURT: I think you covered that.

DEFENSE COUNSEL: Should be brought before the jury.

THE COURT: "*** I think you asked her those questions already. What is it you want to ask her?"

DEFENSE COUNSEL: As to any promises as to dropping or releasing her from the contempt charge and also for flying her somewhere.

THE STATE: Judge, she has purged the contempt by testifying there is no issue of whether we can drop it or not. There is no basis for the contempt any more ***.

\* \* \*

DEFENSE COUNSEL: It can be learned as to whether she [Bell] had an expectation that if she testified, as appears from the State here explaining, it may have been explained to her wrongfully that you purge yourself of the contempt by testifying which is incorrect. We may also learn that she actually had an expectation, some sort of destination and plane tickets. She said she didn't know where she was going to go to. I find that very incredulous to believe. Now I see almost an airplane ticket transaction occurring here in open court."

The trial court responded that Bell had already answered questions about whether she was made any promises by the State and whether she was going to be relocated. However, since defense counsel first became aware of the plane ticket after he cross-examined her, he only generally asked Bell about any promises by the State and did not have the opportunity to specifically ask about the plane ticket. Moreover, Bell admitted the State promised relocation but made no mention of a plane ticket. Defense counsel then requested that the trial court conduct an examination of Bell as to where she expected to go and what she expected to happen as a result of her testimony. Outside the presence of the jury, the following exchange occurred:

"DEFENSE COUNSEL: I want to ask the Court maybe to conduct an examination as to where she expected to go and what she expected to happen. You can conduct that now and listen to her answers and decide if she should be recalled before the jury.

THE COURT: You are still under oath ma'am. Where do you want to go? You're going to be moved out of the state by the State, is that correct?

THE STATE: Judge, can I—

BELL: Yes.

THE COURT: Pass the case."

As the record indicates, the case was passed before the trial court completed questioning Bell in reference to her expectations as requested by defense counsel. When the case was recalled Bell was not

called to testify. Rather, another witness, Detective Winstead, was called to testify before the jury. Following his testimony, the jury was sent to lunch and the trial court asked defense counsel to make an offer of proof as to what he thought Bell would testify to if she were recalled. Defense counsel stated:

> "Well I don't know what she would be testifying to, but I would like to recall her and ask the court to inquire to see if she should be recalled on two areas. First, that she [had] an expectation, a hope that by testifying that the contempt case would be dismissed and she would be released from jail. *** Second area would be did you expect the State to fly you to a destination if you testified and *if you testified in a certain way* and if so what destination. *** Additionally, I would like to ask her the question which I would also like to recall her to ask her the question on direct examination did she leave Chicago in the years '92 through '95 inclusive, that is from August the 8th of '92 until today. *** Because that would go to show whether she was afraid. If she didn't leave I could then argue to the jury that she certainly was not so afraid that she didn't leave town."

The trial court ruled:

> "Okay, as to the area of where she was going to go or whether she expected to leave the State, I am not going to allow you to enter that. Basically, she has already answered that she expected to leave the State, that's No. 1. No. 2, whether or not she left Chicago during the areas of '92 through '95. *** With all due respect you have had a chance to ask her those questions twenty minutes ago and you didn't ask her those questions I am not going to let you recall her to ask her those questions. As to what her expectations were we'll get her out here right now, you can make an offer of proof, ask her those questions what she expected and what was in her mind and if she gives the answers that I think warrant her being around then you can recall her."

Defense counsel was then allowed to question Bell outside the presence of the jury regarding her expectations concerning her contempt case. The following exchange occurred:

> "THE COURT: *** [W]hat do you want to ask her about her contempt?
>
> DEFENSE COUNSEL: Ms. Bell, did you expect or hope that when you testified today the judge would dismiss the contempt case and that you would be released from jail?
>
> BELL: I hoped that he did.
>
> DEFENSE COUNSEL: Okay. And did you get that hope from after you spoke to the State's Attorneys?
>
> BELL: No, after I testified.

DEFENSE COUNSEL: After you testified. And what made you think that after you testified that the contempt case would be dismissed and you would get out of jail?

BELL: Because I've been here long enough.

DEFENSE COUNSEL: And was there anything else that gave you that feeling?

BELL: No.

DEFENSE COUNSEL: Okay. No further questions, Judge.

* * *

DEFENSE COUNSEL: Judge, I don't make the request as to that, I certainly make the request as to the other two reasons which you denied. If you want I can say it again louder but that might change your mind.

THE COURT: No, you want to recall her.

DEFENSE COUNSEL: I want to recall her for the other two points that she has a particular destination and whether she left Chicago from '92 to today.

THE COURT: Okay, and that's going to be denied. All right, now so hopefully Ms. Bell is on her way now."

As noted in *People v. Davis*, 185 Ill. 2d 317 (1998), a defendant does not have to show that a promise of a special favor has been made to the witness or even that an expectation of special favor exists in the mind of the witness; rather, the evidence need only give rise to the inference that the witness has something to gain or lose by testifying. *Davis*, 185 Ill. 2d at 337. Illinois courts have addressed the issue of the obligations imposed upon the State when its witnesses offer testimony in exchange for some beneficial treatment or consideration from the State. In *Davis* our supreme court held that the limitation placed on defendant's cross-examination in that case was harmless beyond a reasonable doubt; however, the court cautioned that a trial court has no discretion to deny a defendant the right to cross-examine in order to show a promise of leniency or promise of a special favor, but only to preclude repetitive or unduly harassing interrogation. *Davis*, 185 Ill. 2d at 337, citing *People v. Ramey*, 152 Ill. 2d 41, 67 (1992).

■ Applying the foregoing principles, we conclude defendant is entitled to an evidentiary hearing on his claimed denial of his right to cross-examine Bell regarding whether she expected to receive a plane ticket from the State if she testified in a certain way. Antoinette Bell was the only witness who identified defendant and testified that he was solely responsible for the deaths of Lowe and Johnson. Her testimony was crucial to the State's case in chief, and the opportunity to probe her credibility, bias and motive for testifying was clearly important to the defense. Essentially, this case was one of credibility. By limiting the ability of the defense to elicit information before the

jury about the plane ticket the State was to obtain for Bell following her testimony, the defense was allegedly denied an opportunity to attack Bell's credibility on the basis that the witness had something to gain, specifically an airplane ticket, by testifying against the defendant. Cross-examination about the destination of the plane ticket was not relevant and was properly barred for purposes of Bell's safety. However, if the State promised her a plane ticket in exchange for testifying in a certain way, that promise allegedly amounted to a special favor or beneficial treatment. We conclude that defendant is entitled to an evidentiary hearing because the allegation in his petition supported by the record demonstrates a substantial showing of a violation of his constitutional right to confront the only eyewitness who testified against him regarding her motive for testifying. See *Hobley*, 182 Ill. 2d at 427-28.

### D. Cross-Examination Regarding Contempt Charge

■ Defendant also claims that he was denied the right to fully cross-examine Bell regarding her expectation of leniency for her pending contempt charge in exchange for her testimony against defendant. However, a review of the record indicates that defendant had an opportunity for effective cross-examination of Bell regarding the contempt charge. During cross-examination, defense counsel in the presence of the jury questioned Bell about the contempt charge. She stated that she was arrested, charged with contempt and spent one month in jail before defendant's trial. When asked whether she was promised anything by the State she responded, "I asked them after I testify could they move me out-of-state. And they said they would." Defense counsel further asked Bell where she expected to be moved. Bell replied, "I'm not sure."

After defense counsel learned of the plane ticket, he requested to recall Bell and further question her as to her expectation concerning the contempt charge. Over the State's objection, the trial court ruled that defense counsel could question Bell as to her expectations concerning the contempt charge and make an offer of proof. After defense counsel recalled Bell, outside the presence of the jury, and questioned her about the contempt charge, he abandoned his request to recall her before the jury to further question her regarding the contempt charge. However, he persisted in seeking to recall her to question her about the plane ticket and her whereabouts from the time of the murders until trial which the trial court refused to allow.

Defendant's rights under the confrontation clause are not absolute. The confrontation clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way

and to whatever extent the defense desires. *Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19, 106 S. Ct. 292, 294 (1985); To determine the constitutional sufficiency of cross-examination, a court looks not to what a defendant has been prohibited from doing, but to what defendant has been allowed to do. *Maldonado*, 193 Ill. App. 3d at 1069. We note that, in the presence of the jury, defense counsel questioned Bell during cross-examination about the contempt charges:

"DEFENSE COUNSEL: Did anything happen to you when you didn't come to court?

BELL: I was arrested a couple of days later.

DEFENSE COUNSEL: Okay. Then what happened?

BELL: I was locked up.

DEFENSE COUNSEL: Okay. And have you been locked up until you testified?

BELL: Yes.

DEFENSE COUNSEL: Okay. Now, in this period of time that you have been locked up, the state's attorney talked to you about your testimony?

BELL: Yes.

DEFENSE COUNSEL: And you have talked to him with what happened?

BELL: Yes."

When asked whether she was promised anything regarding the contempt charge in return for her testimony Bell stated that she requested to be moved out of the state and that the State agreed to her request. Based on the record, we conclude that the jury was exposed to the theory of defense and the facts regarding the contempt charge from which they could appropriately draw inferences regarding Bell's bias, credibility and motive for testifying. We find defense counsel was not unduly restricted in his cross-examination of Bell in the presence of the jury regarding the contempt charge. The allegations of the postconviction petition regarding the contempt charge fail to make a substantial showing of a violation of a constitutional right. Therefore, we affirm the circuit court's dismissal of this claim without an evidentiary hearing.

## E. Evidentiary Hearing

■ The facts and circumstances in this case illustrate the problem faced by prosecutors whenever they call as witnesses persons who have been charged with a criminal offense or who have been promised relocation by the State. In *People v. Nino*, 279 Ill. App. 3d 1027 (1996), a witness who was in custody on charges of residential burglary and arson in an unrelated case testified for the State in a murder case. When asked whether he received any promises or consideration in

exchange for his testimony he stated, "[t]hey ain't give me no deal," and that he was "hoping" to get a deal in exchange for his testimony. 279 Ill. App. 3d at 1035. The day after the trial, however, the prosecutor who tried defendant's case appeared as the prosecutor in the witness's case and reduced the charges to burglary and the witness was sentenced to probation. The appellate court reversed defendant's conviction, concluding that the witness and the State had an unspoken agreement. *Nino*, 279 Ill. App. 3d at 1041.

Similarly, in this case, when Bell was asked whether she was promised anything, she only stated that she wanted to be moved out of the state and that the State had agreed to her request. However, immediately following Bell's testimony, Bell's attorney asked the State about the timetable as to when the State might have Bell's plane ticket. In the present case, the record shows that defense counsel first became aware of the airplane ticket after he completed his cross-examination of Bell. Without an evidentiary hearing, the record is silent as to whether the State promised Bell a plane ticket in connection with her testimony against defendant or whether Bell even knew about the possibility of a plane ticket before testifying.

Moreover, three of Bell's prostitution charges had been dismissed before Bell testified against defendant and Bell was given supervision for criminal trespass just a few weeks before testifying. Only the State can dismiss charges or reinstate charges. In this case, the State dismissed three previous charges against Bell. The record does not indicate whether dismissal of these charges was in any way related to Bell's testifying against the defendant. Cross-examination about such circumstances regarding these charges was prohibited by the trial court. Similarly, the record does not indicate whether the State recommended supervision on Bell's trespass charge or, if such a recommendation were made, whether resolution of Bell's trespass case was in consideration for her testimony against the defendant.

The plane ticket, the dismissal of Bell's previous charges, Bell's supervision and the areas Bell frequented after the murders were all factors that the jury was prevented from considering. These were facts that the jury was not able to use in its determination and evaluation of Bell's bias, credibility and motive for testifying. Bell was the only prosecution witness who identified defendant as the person responsible for the double murder. "[T]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue v. Illinois*, 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221, 79 S. Ct. 1173, 1177 (1959).

The question as to whether the plane ticket and the resolution of her criminal cases were promised to her by the State in exchange for her testimony against the defendant should be answered by the evidentiary hearing. The trial court then must evaluate whether the limitation on cross-examination created a reasonable probability that the outcome of defendant's trial would have been different had the trial court allowed defense counsel to cross-examine Bell before the jury as to the resolution of her prior criminal charges, the circumstances concerning the airplane ticket, and her continued contact with the neighborhood where the murders occurred. These factors should all be scrutinized to determine whether they affected Bell's motive, interest and bias in testifying and whether limitation of cross-examination regarding these factors affected the outcome of the trial by impacting on the jury's deliberative process and judgment. *Coleman*, 183 Ill. 2d at 396. At the evidentiary hearing any benefit, leniency, spoken or unspoken agreements or promises made by the State to Bell regarding her testimony must be evaluated to determine whether the trial court's limitation on cross-examination created a substantial danger of prejudice and denied defendant his right to test the accuracy of Bell's account of the events. *People v. Harris*, 123 Ill. 2d 113, 145 (1988).

We note that Bell was asked by defense counsel whether the State made any promises to her if she testified against the defendant and she testified that the only promise the State made to her was to relocate her. The knowing use of perjured testimony is a violation of a defendant's due process rights. *People v. Jimerson*, 166 Ill. 2d 211, 223 (1995). This is true even when the testimony does not relate to a material issue but, rather, goes to the credibility of the witness. *People v. Martin*, 46 Ill. 2d 565, 568 (1970). If a prosecutor knowingly permits false testimony to be used, the defendant is entitled to a new trial. *Jimerson*, 166 Ill. 2d at 224. If Bell knew she was to receive from the State compensation of some kind in the form of a plane ticket or that she received from the State consideration in the form of criminal charges which were dismissed or resolved with supervision in connection with her testimony against the defendant and she did not so testify when asked whether the State made any promises, such factors would be critical in determining whether defendant's due process rights were violated. *Steidl*, 177 Ill. 2d at 261-62. Based on the record before us, it is not possible to determine whether there was any compensation or consideration related to Bell's testimony against defendant other than the promise by the State to relocate Bell. Accordingly, the trial court erred in not holding an evidentiary hearing at which evidence as to whether Bell expected to receive compensation or

had received consideration could be adduced. With these principles in mind we order the trial court to conduct an evidentiary hearing regarding the restriction of the cross-examination of Antoinette Bell.

We note the approach recommended in *People v. Ellis*, 315 Ill. App. 3d 1108, 1118 (2000), would avoid the problems raised in this case concerning whether a witness receives consideration for his or her testimony; "[t]he position the State finds itself in regarding these situations can be resolved in the future by the simple expedient of memorializing the benefit the witness is to receive and to reveal such circumstances with candor and alacrity." The *Ellis* court wisely recognized that the failure to memorialize the benefits makes it much more likely that their existence will not be disclosed and may encourage witnesses themselves to mischaracterize what they were to receive in consideration for their testimony. *Ellis*, 315 Ill. App. 3d at 1108.

## II. RIGHT TO COUNSEL DURING LINEUP

■ We now consider whether the circuit court improperly ruled on defendant's second claim that the right to counsel attached before the lineup of September 13, 1993, because defendant was in custody on a related charge, and that defense counsel was ineffective for failing to raise the issue in the motion to suppress identification. Where a postconviction petitioner has previously taken direct appeal from judgment of conviction, judgment of the reviewing court is *res judicata* as to all issues actually decided by the court, and any other claims that could have been presented to a reviewing court, if not presented, are waived. *People v. Flores*, 153 Ill. 2d 264 (1992). Here, defendant failed to pursue this claim in the trial court or in the direct appeal. In the direct appeal, defendant raised other issues related to the motion to suppress the lineup identification. As such, this issue has been waived.

Even if this issue were not waived, we would find defense counsel made a strategic decision that was in no way fundamentally unfair to defendant. Defendant contends that the right to counsel attached before the lineup of September 13, 1993, because defendant was in custody on an allegedly related charge, the murder of Jeffrey Tolefree, and that his trial counsel should have pursued a motion to suppress the identification on this ground. The defendant was charged with the Tolefree murder on December 8, 1992. The record reflects that defense counsel was aware of the facts relating to both the charged and the uncharged offenses, as he represented the defendant on both charges. Moreover, in defendant's written motion *in limine*, in which he sought to bar evidence concerning defendant's parole status, defendant alleged that he was in custody on an "unrelated matter" at or after he made statements to the police on December 9, 1992, and at the time of

the lineup in this case on September 13, 1993. Defendant took a position at trial, that he was in custody on the Tolefree murder and this was an "unrelated matter," which is contrary to the position he is now taking. We further note that trial counsel's strategy in maintaining that the cases were not related was undertaken in order to avoid the imposition of the death penalty in this case and such strategy was successful. Had trial counsel pursued a motion to suppress on the ground that the crimes were related, any later argument that they were not related would have been disingenuous in rebutting the State's theory that defendant killed Jeffrey Tolefree because Tolefree witnessed the double murder of Johnson and Lowe. Defense counsel's decision was strategic and defendant's claim of ineffective assistance is not supported by the record. *People v. Ramey*, 152 Ill. 2d 41 (1992). We therefore affirm the circuit court's dismissal of this claim without an evidentiary hearing as the allegations regarding this issue fail to make a substantial showing of a violation of a constitutional right.

## III. CONCLUSION

The circuit court improperly dismissed defendant's postconviction petition without an evidentiary hearing regarding the allegations concerning defendant's cross-examination of the State's only eyewitness, Antoinette Bell. The previously discussed allegations contained in defendant's postconviction petition regarding cross-examination of Antoinette Bell were sufficient to make a substantial showing of a constitutional violation and to require an evidentiary hearing to determine if the violation did in fact occur. We note that appellate counsel may "refrain from raising those issues which, in his judgment, are without merit, unless his appraisal of the merits is patently wrong." *People v. Barnard*, 104 Ill. 2d 218, 230 (1984). For the reasons set forth in this opinion, appellate counsel should have raised the issue of improper limitations on the cross-examination of Antoinette Bell, the State's only eyewitness.

We vacate the trial court's judgment dismissing defendant's petition. We remand this case to the circuit court with instructions to hold an evidentiary hearing consistent with the views expressed herein on the issue of whether defendant's constitutional right to confront Antoinette Bell was violated by the trial court's refusal to allow defense counsel to cross-examine Bell before the jury as to the following: (1) the circumstances surrounding resolution of her four prior criminal charges; (2) the circumstances surrounding the State obtaining an airplane ticket for Bell; and (3) the fact that Bell continued to frequent the neighborhood where the murders occurred. We emphasize that we make no determination regarding defendant's ultimate success on his

238

petition. We affirm the circuit court's order dismissing defendant's petition in all other respects.

Affirmed in part and reversed in part; cause remanded with instructions.

McNULTY, P.J., and COHEN, J., concur.